1  **EDWARD A. KUNNES** (SBN 160632)
   100 N. Wiget Lane, Suite 150
2  Walnut Creek, CA 94598
   Telephone:    (925) 930-9550
3  Facsimile:    (925) 930-9588

4  Attorneys for Plaintiff
   **Fidelity National Title Company**

5

6

7

8              UNTIED STATES BANKRUPTCY COURT

9         NORTHERN DISTRICT OF CALIFORNIA (OAKLAND)

10
   In re:                                Bk. No. 09-40135
11
                                         Adv. Case No. 09-4166
12  TINA LOUISE DUNCAN,
                                         Chapter 7
13       **Debtor.**

14  _____/    **TRIAL BRIEF TO DEEM**
                                         **DEBT EXCEPTED**
15  **FIDELITY NATIONAL TITLE**          **FROM DISCHARGE**
    **COMPANY,**                         [11 U.S.C. §523(a)(2)(A); (A)(2)(B); (4);
16                                       and (6)]
             **Plaintiff,**
17                                       Trial Date: October 27, 2009
    **v.**                              Time: 9:30 a.m.
18                                       Judge: Edward Jellen
    **TINA LOUISE DUNCAN,**
19
             **Defendant.**
20  _____/

21

22       Plaintiff Fidelity National Title Company ("Fidelity National") sets forth its trial brief as

23  follows:

                              **I. Facts.**
24
        Fidelity National will be able to prove at trial these facts:
25
        Tina L. Duncan ("Duncan") erroneously received half a million dollars by failed to satisfy
26
27  a new loan that she had obtained apart from and during the pendency of the Fidelity National

28  escrow. On account of having made numerous false representations and having taken inconsistent

   _____

                                -1-              Trial Brief for Nondischargeability

action with obtaining a loan secured by a first position lien, Duncan was able borrow more money than the total value of her property.

On or about January 5, 2006, Fidelity National was the escrow holder for the refinance of the real property by borrower Duncan, escrow number 06-161572. The escrow was opened to enable Duncan to secure a first deed of trust against the property being commonly known as 10623-10625 Graffian Street, Oakland, CA (hereinafter the "Property").

On March 31, 2006, a trust deed against the Property in favor of Ameriquest Mortgage recorded in the County Recorder's Office for Alameda County securing a promissory note in the amount of $576,000.00. This refinance by Duncan was undertaken at Financial Title Company during the pendency of the Fidelity National escrow.

Less than a month after, on April 26, 2006, a trust deed against the Property in favor of SRI Mortgage recorded in the County Recorder's Office for Alameda County securing a promissory note in the amount of $612,000.00. This recording was part of the Fidelity National escrow transaction.

The Property was appraised at the time for $720,000.00. Duncan testified in deposition that the Property was worth $1,150,000.00. Under either scenario, she borrowed more money than the Property was worth.

At no time during the pendency of the Fidelity National escrow did Duncan inform Fidelity National or the lender to that escrow transaction, SRI Mortgage, that she was obtaining or had obtained new refinancing through Ameriquest Mortgage. Duncan instructed Fidelity National in the Borrower's Escrow Instructions in the Estimated Closing Statement to payoff the prior lender Chase's loan, notwithstanding the fact that she had satisfied Chase through her refinance with Ameriquest.

Fidelity National sent refinance proceeds to Chase and they were returned by Chase to the Fidelity National escrow account. Only at that point did Duncan informed the escrow assistant that the Chase loan had been satisfied, but she did not instruct the escrow to payoff Ameriquest, the new first deed of trust. Instead, she direct the money to be wired to herself. Escrow, unaware of the new Ameriquest Mortgage loan, wired $505,221.54 to Duncan. Thereafter, Fidelity

Trial Brief for Nondischargeability

Case: 09-04166    Doc# 19    Filed: 10/20/09    Entered: 10/21/09 15:34:48    Page 2 of 9

National was informed that the secured obligation owed to Ameriquest Mortgage remained outstanding against the Property.

Pursuant to the relevant terms of the escrow instruction, on December 11, 2008, Fidelity National Title Company was compelled to advance $604,114.99 to obtain a release of the Property by Ameriquest Mortgage's successor, Citi Residential Lending after both the junior and senior had foreclosed.

The amount of unpaid debt on SRI loan at the time it went to foreclosure was $644,571.06 on September 17, 2008. The amount of the unpaid debt on the Ameriquest loan at the time it went to foreclosure was $611,700.64 on September 30, 2008. The amount that Fidelity National had to pay to Ameriquest's assigns obtain the release of the subject property to SRI Mortgage's assigns was $604,114.99 on December 11, 2008.

At the time that Duncan signed documents in the escrow file, she stated that she had made no misrepresentations in her loan application or other documents and did not omit any pertinent information. The loan application to SRI Mortgage contained two significant errors. Under liabilities, the loan by Ameriquest Mortgage in the amount of $576,000.00 (the "Ameriquest Loan") was omitted. Duncan also stated that she made a monthly income of $8,500.00 from Duncan Management. Duncan testified in deposition that she actually made no income from Duncan Management. Duncan also failed to list her other mortgage liabilities as against other properties. There also are numerous signed documents in the Fidelity National escrow file reflecting that the SRI loan was to be placed in first lien position and that Chase was to be satisfied by the refinance proceeds.

She also stated that she had carefully reviewed the HUD-1 settlement statement and that it was true and correct to the best of her knowledge. The HUD-1 Statement contained the critical error that it was satisfying the obsolete loan by Chase, and contained the salient fact that the borrower was to receive cash proceeds in the amount of $35,958.53.

///

///

///

-3-                                    Trial Brief for Nondischargeability

# II. Legal Argument.

**A. This debt was for money and refinancing obtained by false pretense, false representation, or actual fraud.**

The elements of a claim under 11 USC § 523(a)(2)(A) are: (1) that the debtor made a representation; (2) the debtor knew at the time the representation was false; (3) the debtor made the representation with the intention and purpose of deceiving the creditor; (4) the creditor relied on the representation; and (5) the creditor sustained damage as the proximate result of the representation. *See Apte v. Japra*, 96 F3d. 1319, 1322 (9th Cir. 1996).

Duncan made several false representations in her loan application and in the escrow documents. Duncan admitted in her deposition testimony that her loan application failed to list the Ameriquest Loan and that she incorrectly directed Fidelity National to satisfy the Chase loan which had previously been satisfied by the Ameriquest Loan. She represented that SRI Mortgage would have a first lien position all the while having no intention of placing it in first lien position. She did not disclose the Ameriquest Loan to Fidelity National or SRI Mortgage. These representations and omissions induced SRI Mortgage to loan more money on the Property than the Property was worth and induced Fidelity National to close the transaction that was in violation of the escrow instruction explicitly directing the SRI deed of trust to be senior to all other encumbrances.

The element of deceit is evident from the fact that Duncan is businesswoman who has bought and invested in numerous properties, taken many real estate loans and managed numerous other properties. Duncan was aware of the significance of her misrepresentations. Duncan's testimony that she was unaware that the loans far exceeded the Property's value and that she was unaware that SRI Mortgage intended to encumber the Property with a senior lien, are simply not believable given her experience and the vast amount of documents showing otherwise.

*Apte v. Japra, supra* at 1322 and 1323, provides a through analysis of the element of justifiable reliance. *Apte* states:

> "[A] person is justified in relying on a representation of fact 'although he might have ascertained the falsity of the representation had he made an investigation.'" *Field*, 116 S. Ct. at 444 (quoting the Restatement (Second) of Torts (1976) § 540).

Case: 09-04166    Doc# 19    Filed: 10/20/09    Entered: 10/21/09 15:34:48    Page 4 of 9

Although one cannot close his eyes and blindly rely, mere negligence in failing to discover an intentional misrepresentation is no defense to fraud. *Eashai*, 87 F.3d at 1090-91 (quoting *In re Apte*, 180 Bankr. 223, 229 (9th Cir. BAP 1995); *In re Kirsh*, 973 F.2d 1454, 1459 (9th Cir. 1992))." *Id.* at 1322.

*Apte v. Japra*, *supra* at 1323, comparing security fraud cases to 11 U.S.C. §523(a)(2)(A), holds that the materiality of the fact in the face of a duty to disclose will satisfy the element of justifiable reliance. Duncan had a duty to disclose. *See Apte v. Japra, supra* at 1324.

In determining whether Fidelity National justifiably relied upon Duncan's representation, one needs to understand the operation of the escrow company and the title company performing this refinance escrow. Fidelity National does not operate as a monolithic entity over any one escrow. Rather there are various persons in different departments working to close an escrow transaction. Among them are the escrow officer in the escrow department with his or her assistants and the chief title officer in the title department with his or her title searchers. In this case, the title department and the escrow department worked in different buildings. Nonetheless, in an ideal world all information would seamlessly flow from one department to the next.

However, a customer who misrepresents the liens against her property by obtaining a first position lien during the pendency of another escrow in which she is purportedly acquiring a first position lien can and likely will confuse the escrow personnel. In the instant action, a title search found the Ameriquest deed of trust. But the understanding of the escrow officer was frustrated by a HUD-One Statement that showed the Chase loan was to be satisfied and that Duncan certified she had read and reviewed, by the SRI Mortgage's Special Instructions that stated the Chase loan was to be satisfied and that Duncan signed, and by the Estimated Closing Statement that stated the Chase loan was to be satisfied and that Duncan signed. Furthermore, there were numerous other documents that showed the SRI Mortgage was to have a lien in first position. The confusion generated by Duncan's action (simultaneously obtaining a first at another title company), her non-disclosure of the Ameriquest Loan, her misrepresentation of SRI Mortgage's lien position and Chase's payoff created a perfect storm.

///

///

Trial Brief for Nondischargeability

**B. This debt was for money and refinancing of credit obtained by use of a materially false statement in writing regarding debtor's financial condition.**

Duncan has admitted in deposition testimony that her written statements regarding placing SRI Mortgage's lien in senior position, not disclosing the Ameriquest Loan and requests for SRI Mortgage's loan proceeds to payoff the Chase loan were incorrect. At the same time, she states that she never read any of those signed documents.

In the Ninth Circuit, as other circuits, the scienter requirement for a fraudulent misrepresentation is established by showing "either actual knowledge of the falsity of a statement or reckless disregard for its truth . . ." *In re Houtman*, 568 F.2d 651, 656 (9th Cir. 1978), *overruled on other grounds. Gertsch v. Johnson & Johnson*, 237 B.R. 160, 167 (9th Cir. 1999), confirms that evidence requirements for establishing scienter have remained the same since the Bankruptcy Act of 1898.

> Other circuits are in accord, holding that intent to deceive can be inferred from the totality of circumstances, including reckless disregard for the truth. [Citations omitted.] *Gertsch v. Johnson & Johnson*, *supra* at 167 and 168.

*In re Coughlin*, 27 B.R. 632, 636 (9th Circuit 1983) applies evidence of reckless disregard for its truth as follows:

> We reject Coughlin's argument that the evidence does not support a finding of intent to deceive. Although a showing of unknowing inaccuracy is not enough to establish intent to deceive, [Citation omitted], actual knowledge of the falsity of the financial information is not required. [Citations omitted] A creditor can establish intent to deceive by proving reckless indifference to, or reckless disregard of, the accuracy of the information in the financial statement by the debtor. [Citation omitted.] Courts may assume that debtors intend the natural consequences of their acts. [Citation omitted.] Intent to deceive is present when the debtor has "seen the financial statement and the errors were such that he knew or should have known of their falsity." [Citations omitted.] *In re Coughlin*, *supra* at 636.

*Federal Credit Union v. Lange*, 40 B.R. 554, 556 (S. OH 1984), distinguishes between the subjective standard that may be applicable to some claims of non-dischargeability under §523(a)(2)(A) and a false writing under §523(a)(2)(B) by reviewing the legislative history of both subparts and concludes that "unless otherwise qualified, either in the terms of the statute or in the legislative history, the intent to deceive requirement under the 1978 Bankruptcy Act is satisfied by the same standards as would satisfy it predecessor under the 1898 Act." A reckless disregard

Trial Brief for Nondischargeability

Case: 09-04166    Doc# 19    Filed: 10/20/09    Entered: 10/21/09 15:34:48    Page 6 of 9

of the truth was well established under the 1898 Act. *Id.* There is nothing in the language of the subsequent bills since 1978 that would indicate a change to this subpart of §523. *See* 11 USC §523(a)(2)(B).

Duncan's assertion that she did not read a single document in the escrow file or the loan application file will not avail her of the bankruptcy discharge because a specific intent is not necessary to demonstrate the request element of scienter under 11 USC §523(a)(2)(B). *See Baker v. Duneman (In re Duneman),* 12 Mont. B.R. 253, 259 (1993) (citing *In re Houtman,* 568 F.2d 651, 656 (9th Cir. 1978)). "Gross recklessness to the truth also satisfies the fourth … element of intention of deceiving." *Id.* (citing *Knoxville Teachers Credit Union v. Parkey,* 790 F.2d 490, 492 (6th Cir. 1986)); *In re Redford,* 7 B.R. 322 (1980 MD Ga).

11 USC §523(a)(2)(B) also differs from 11 §523(a)(2)(A) in that reasonable reliance by the creditor is required on a written financial statement. *See generally, Field v.* Mans, 516 U.S. 59 (1995). *Groth v. Masegian,* 134 B.R. 402, 406, 407 (E. Ca 1991), reviews the line of cases requiring investigation and declines to follow that line. *Groth* states:

> The court acknowledges this line of precedent but declines to follow it. First, the court is in accord with the court in *Allen* which adroitly noted, "the problem with cases placing a duty of verification on creditors is that the duty appears to derive not from congressional intent but from judicial revision." 65 Bankr. at 752. In addition, opinions imposing an affirmative duty on creditors to conduct an independent credit check of debtors or to verify a financial statement suffer from logical and practical inconsistencies. As the Ninth Circuit noted in *In re Lansford,* 822 F.2d 902, 904 (9th Cir. 1987), the affirmative duty defense is "unseemly" in that it allows a debtor to intentionally mislead its creditor by supplying false information and then "argue that he should be excused from section 523 because the [creditor] believed him." *Id.* at 904. The judicially-created affirmative duty defense has been further critized as foisting a negligence doctrine into the realm of intentional torts as well as creating a situation where a debtor could deny reliance altogether by claiming that the creditor relied not on the debtor's false financial statement, but on the creditor's own independent investigation. *See, e.g., In re Richards,* 71 Bankr. 1017, 1021-22 (Bankr. D. Minn. 1987). *Id.* at 406, 407.

While reasonable reliance will consider whether an average escrow officer in the community would rely upon Duncan's representations, the reliance element will not require an independent verification of Duncan's representations. Given the circumstance that Chase appeared to be the senior loan to the escrow officer and that there was no disclosure regarding Duncan recently seeking out and obtaining a new loan, it was reasonable to rely upon Duncan's

-7-                                                  Trial Brief for Nondischargeability

representations in the escrow file.

### III. Conclusion.

By a preponderance of the evidence (*Grogan v. Gardner*, 498 U.S. 279, 291), Fidelity National will establish that Duncan is not entitled to a discharge of the subject debt because she made false representations and used materially false written statements regarding her financial condition.

DATE: 10/20/09

EDWARD A. KUNNES
Attorney for Fidelity National Title Company

Trial Brief for Nondischargeability

**PROOF OF SERVICE**

I am employed in the County of Contra Costa, State of California. I am over the age of 18 years and not a party to the within action. My business address is 100 North Wiget Lane, Suite 150, Walnut Creek, California 94598.

On the date entered below, I served the within:

**1. Trial Brief to Deem Debt Excepted From Discharge**
**2. Plaintiff's Trial Exhibits (to attorney only)**
**3. Witness List**

on the parties in said action by placing a true copy thereof as indicated below, addressed as follows:

Tina Louise Duncan                    James P. McBride, Esq.
P.O. Box 5871                         1065 A Street, Suite 224
Oakland, CA 94605                     Hayward, CA 94541

(√)   BY MAIL: I caused such envelope(s) with postage thereon fully prepaid to be placed for collection and mailing at my place of business. Following ordinary business practices, said correspondence will be deposited with the United States Postal Service at Walnut Creek, California, on the referenced date in the ordinary course of business. There is delivery service by United States mail to the place(s) so addressed in the City of Walnut Creek, County of Contra Costa, State of California.

( )   BY PERSONAL SERVICE: I caused such envelope to be delivered by hand on the office(s) of the addressee(s).

( )   BY OVERNIGHT MAIL: I caused such envelope to be delivered by Golden State Overnight to the office(s) of the addressee(s).

( )   BY FACSIMILE: I caused a copy of such document to be sent via facsimile transmission to the office(s) of the parties above stated.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

DATED: October 20, 2009

_____
JOANN RAY