

Signed: November 05, 2009

_____
EDWARD D. JELLEN
U.S. Bankruptcy Judge
_____

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

In re                                       No. 09-40135
                                            Adv. No. 09-4166
TINA LOUISE DUNCAN,

               Debtor.     /

FIDELITY NATIONAL TITLE
COMPANY,

               Plaintiff,

vs.

TINA LOUISE DUNCAN,

               Defendant.   /

## DECISION

By this adversary proceeding, plaintiff Fidelity National Title Company ("Fidelity") seeks a nondischargeable judgment against Tina Louise Duncan, the above debtor ("Duncan"), pursuant to Bankruptcy Code § 523(a)(2), (4), and (6). The gravamen of Fidelity's complaint is that it had to make good under a title policy it issued in favor of SRI Mortgage Co. ("SRI") insuring that a loan SRI made to Duncan would be secured by a first priority deed of trust. According to Fidelity, SRI's deed of trust ended up being of second

Decision

priority and of inconsequential value due to misrepresentations and other wrongful acts by Duncan. The matter has been tried before the court, and the court now issues its decision in favor of Fidelity.

A. <u>Background</u>

On March 28, 2006, Duncan signed a deed of trust in favor of Ameriquest Mortgage Co. ("Ameriquest") to secure a loan in the sum of $576,000. The deed of trust was recorded March 31, 2006 and covered certain rental property on Graffin Street in Oakland, California (the "Property") that Duncan then owned. The primary purpose of the loan was to refinance an earlier loan by Chase Home Finance, LLC ("Chase") that encumbered the Property. Ameriquest paid off the Chase loan with the loan proceeds, and its deed of trust thereby became a first priority lien on the Property.

Several weeks later, on April 14, 2006, Duncan signed a deed of trust in favor of SRI to secure a loan in the sum of $612,000. The deed of trust was recorded April 26, 2006 and covered the Property, which Duncan still owned. The primary purpose of the loan is in dispute.

What is not disputed is that SRI caused Fidelity to transmit the loan proceeds to Chase in accordance with the escrow instructions for the loan closing that Duncan had signed. Chase, however, having already been paid, returned the money to the escrow account for the SRI loan. Duncan then took control of the money. Because the Ameriquest deed of trust remained of record, SRI's lien ended up being of second priority.

/////

For approximately 20 months, Duncan serviced the loans secured by the respective deeds of trust in favor of Ameriquest and SRI. Eventually, however, she defaulted and was unable to work out a "short sale" (whereby the lienholders agree to a sale even though the proceeds will be insufficient to pay off all the liens in full). Fidelity, having insured the first priority of SRI's deed of trust, paid the sum of $604,114.99 to Ameriquest's successor on December 11, 2008 in order to place SRI in first position. SRI's successor eventually foreclosed.

On January 9, 2009, Duncan filed a voluntary chapter 7 petition herein. The present adversary proceeding followed.

B. <u>Misrepresentation with Intent to Deceive</u>

Bankruptcy Code § 523(a)(2)(A) provides:

> A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt - . . . (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by - (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

To prevail under § 523(a)(2)(A), a creditor must establish that: (1) the debtor made a representation, (2) with knowledge of its falsity, (3) with the intention and purpose of deceiving the creditor, (4) that the creditor justifiably relied on the representation, <u>Field v. Mans</u>, 516 U.S. 59, 116 S.Ct. 437 (1995)(justifiable reliance required), and (5) that the creditor sustained damage as the proximate result thereof. <u>In re Britton</u>, 950 F.2d 602, 604 (9th Cir. 1991). The creditor must establish each

Decision 3

of these elements by a preponderance of the evidence. <u>Grogan v. Garner</u>, 498 U.S. 279, 111 S.Ct. 654 (1991).

Here, Duncan concedes her false representations and omissions. Her signed loan application for the SRI loan, dated April 24, 2006, did not disclose the existence of the outstanding Ameriquest loan. However, it did "disclose" the no-longer-outstanding Chase loan that Duncan had paid off almost one month earlier. Duncan further concedes that at no time did she tell SRI or Fidelity that she had recently paid off Chase, or that the Property was subject to a first deed of trust in favor of Ameriquest.

Additionally, Duncan concedes that she had represented in the escrow instructions dated April 18, 2006, the California Borrower Acknowledgment that she signed on April 19, 2006, and the closing instructions that she signed on April 19, 2006 that her debt to SRI was to be secured by a first deed of trust.

Duncan further concedes that she misrepresented that the Chase loan was still outstanding, not only in her loan application, but also in the escrow instructions and the closing instructions that she signed.

Duncan testified that she signed all the loan documents without knowledge of their contents, and thus, that notwithstanding her numerous misrepresentations, she had no intent to deceive SRI or Fidelity. Duncan also testified that she borrowed the moneys to effect repairs to the Property and one other parcel of property that she owned, with the understanding that the SRI loan was to be secured by a second priority deed of trust on the Property.

Decision 4

The strong weight of the evidence, however, was to the contrary, and supports the conclusion that Duncan had to have been aware that SRI intended that its loan be secured by a first deed of trust.

Duncan is, and at the time of the SRI loan was, an experienced real estate investor. On two prior occasions, and as recently as January 2006, she had applied for first deed of trust loans on the Property to refinance the Chase first deed of trust, and the prospective lenders had turned her down. For Duncan to assert that she believed that SRI would lend to her on the security of a second deed of trust when no other lender would lend on the security of a first deed of trust defies credulity.

This conclusion is bolstered by the fact that the value of the Property Duncan had placed on her loan application to SRI was only $720,000. Likewise, SRI's appraisal report assigned a value to the Property of $720,000, an item of information to which Duncan had access.[1] Thus, if Duncan actually believed that SRI intended to be in second position behind Ameriquest, it would follow that she also believed that SRI would have been willing to extend her a $612,000 loan behind a first priority encumbrance in the sum of $576,000, bringing the total of the encumbrances to $1,188,000. This amount

---

[1] In accordance with applicable law, SRI notified Duncan on April 14, 2006 that she had the right to a copy of the appraisal report in connection with her then-pending application for credit. On April 19, Duncan signed an Acknowledgment that she had been so advised.

Decision 5

is $468,000 in excess of the amount Duncan stated the Property was worth. Again, this defies credulity.

Duncan testified, unconvincingly, that she had no interest in seeing SRI's appraisal report and was unaware of the valuation SRI had placed on the Property. Duncan further testified that she did not read the five-page loan application setting forth the $720,000 valuation, which she signed in two places and initialed on three additional pages. Duncan also testified that she believed the Property was worth $1,150,000, a valuation sufficient, in her opinion, to fully secure a loan by SRI collateralized by a second deed of trust.

In support, Duncan introduced into evidence another loan application stating a Property valuation of $1,150,000. She testified that she had given this application to an Anthony Randolph, and that Randolph had agreed to help her obtain a loan on the property secured by a second deed of trust. However, Randolph did not testify at trial, and no credible evidence was presented that Duncan ever furnished this application to SRI or Fidelity. Moreover, even this inflated Property valuation is less than the total of the Ameriquest and SRI liens.

For all the foregoing reasons, the court rejects Duncan's assertion that she believed SRI's loan was to be secured by a second deed of trust.

Apart from the above, Duncan argues that Fidelity should have known about the Ameriquest deed of trust before it insured title, and that she cannot be held responsible for its error. This

Decision 6

argument fails. Fidelity admits that it was negligent in failing to discover the Ameriquest deed of trust. However, as the Ninth Circuit has stated: "Although one cannot close his eyes and rely blindly, mere negligence in failing to discover an intentional misrepresentation is no defense to fraud." <u>In re Eashai</u>, 87 F.3d 1082, 1090-91 (9th Cir. 1996) quoting <u>In re Apte</u>, 180 B.R. 223, 229 (9th Cir. BAP 1995), aff'd 96 F.3d 1319.

Duncan also argues that the fact she made loan payments to Ameriquest and SRI for 20 months demonstrates her intention to repay the loans. True or not, this is simply irrelevant: the issue here is not whether Duncan borrowed without intending to repay SRI, but rather, whether she misrepresented facts and withheld material information from SRI and Fidelity. <u>See</u> <u>In re Demarest</u>, 176 B.R. 917, 920 (Bankr. W.D. Wash. 1995) (rejecting a similar argument under similar circumstances).

The court holds that the weight of the evidence established that Duncan, with knowledge of the facts and with the intent to deceive SRI and Fidelity, concealed from them the presence of the Ameriquest deed of trust and the fact that Chase had been paid off, and affirmatively misrepresented to them the actual state of the Property and the encumbrances thereon.

C. <u>Justifiable Reliance and Causation</u>

To prevail, Fidelity must establish that it justifiably relied on Duncan's misrepresentations and concealment. <u>Field v. Mans</u>, 516 U.S. 70, 116 S.Ct. 437 (1995). The documents in evidence from Fidelity's files for the loan at issue show that SRI intended to

Decision 7

extend Duncan a $612,000 loan to pay off Chase, secured by a first deed of trust on the Property. The documents also show that Fidelity sent Chase approximately $505,000 in the belief that the Chase loan was still outstanding.

A representative of SRI did not testify at trial, but this is not determinative. In In Re Apte, 96 F.3d 1319, 1323 (9th Cir. 1996), the Ninth Circuit stated that "[T]he Supreme Court has recognized the difficulty of proving the reliance or causation elements in a case of fraudulent nondisclosure." Id.

The Ninth Circuit went on to quote with approval the Supreme Court's statement in a securities fraud case:

> Under the circumstances of this case, involving primarily a failure to disclose, positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in the making of this decision. This obligation to disclose and this withholding of a material fact establish the requisite element of causation in fact.

Apte, 96 F.3d at 1323 quoting Affiliated Citizens v. United States, 406 U.S. 128, 153-54, 92 S.Ct. 1456, 1472 (1972) (citations omitted).

The Ninth Circuit then stated: "The reasoning of these securities cases applies equally to fraud cases in the bankruptcy context. Indeed the nondisclosure of a material fact in the face of a duty to disclose has been held to establish the requisite reliance and causation for actual fraud under the Bankruptcy Code." Apte, 96 F.3d at 1323 (citation omitted).

/////

Case: 09-04166   Doc# 23   Filed: 11/05/09   Entered: 11/05/09 14:44:57   Page 8 of 12

With reference to the issue of when a debtor has a duty to disclose, the Ninth Circuit, taking its lead from the Supreme Court's decision in Field, 516 U.S. at 70, 116 S.Ct. at 443-44, looked to the Restatement (Second) of Torts (1976), quoting Section 551, which reads in relevant part:

> (1) One who fails to disclose to another a fact that he knows may justifiably induce the other to act or refrain from acting in a business transaction is subject to the same liability to the other as though he had represented the nonexistence of the matter that he has failed to disclose, if, but only if, he is under a duty to the other to exercise reasonable care to disclose the matter in question.
> (2) One party to a business transaction is under a duty to exercise reasonable care to disclose to the other before the transaction is consummated,
> . . .
> (e) facts basic to the transaction, if he knows that the other is about to enter into it under a mistake as to them, and that the other, because of the relationship between them, the customs of the trade or other objective circumstances, would reasonably expect a disclosure of those facts.

Apte, 96 F.3d at 1324 quoting Restatement (Second) of Torts (1976) § 551.

Here, Duncan not only concealed, but affirmatively misrepresented, facts she knew were material to SRI and Fidelity and which she had a duty to disclose, knowing that SRI and Fidelity would expect such disclosure.

With reference to Fidelity's negligence in the context of the justifiable reliance issue, the following comment by the Supreme Court in Field is most instructive:

> The Restatement expounds upon justifiable reliance by explaining that a person is justified in relying on a representation of fact "although he might have ascertained the falsity of the representation had he made an investigation." . . . Significantly for our purposes, the

Decision                               9

> illustration is given of a seller of land who says it is free of encumbrances; according to the Restatement, a buyer's reliance on this factual representation is justifiable, even if he could have "wa1k[ed] across the street to the office of the register of deeds in the courthouse" and easily have learned of an unsatisfied mortgage. The point is otherwise made in a later section noting that contributory negligence is no bar to recovery because fraudulent misrepresentation is an intentional tort.

Field, 516 U.S. at 70, 116 S.Ct. at 444 quoting Restatement (Second) of Torts (1976) § 540, Illustration 1.

In In re Demarest, 176 B.R. 917 (Bankr. W.D. Wash. 1995), a case with facts very similar to those present here, the court applied the foregoing principles to hold that a debtor that had concealed the true state of title from a title company owed a nondischargeable judgment to the title company for the damage the title company sustained when it had to pay off an undiscovered deed of trust holder. In so holding, the court stated:

> In short, where an individual knows, as did these debtors, that another is acting without knowledge of material facts, the reliance element is satisfied by objective proof, i.e. whether a reasonable person might have considered the facts important to his or her decision. Conversely, it is not a defense that the plaintiffs lack of knowledge was based on his own negligence in ascertaining the truth. In this case, the debtor husband, an attorney, experienced in real estate matters, knew that the title company was undertaking to ensure a defective title, and further that it was relying on incorrect information. Yet he did nothing to dispel the false impression under which the title company was operating, and he even signed a warranty deed. He may have disclosed the encumbrance on the purchase and sale agreement. However, that did not discharge his duty to disclose the error to the title company.

Id. at 921.

Thus, Fidelity's negligence does not preclude a finding of justifiable reliance.

/////

Decision                          10

The court holds that Fidelity has established its justifiable reliance, based on Duncan's misrepresentations and failure to disclose facts that she had a duty to disclose, and that such misrepresentations and failures to disclose proximately caused Fidelity to suffer damage.

D. Damages

The uncontroverted evidence showed that Fidelity paid Ameriquest's successor, Citiresidential, the sum of $604,114.99 in order to place SRI's deed of trust in first position. Duncan does not dispute that this is the amount of Fidelity's loss, but argues that, because SRI or its successor foreclosed its lien by power of sale, California's antideficiency legislation precludes any judgment against her in connection with SRI's loan to her. See Cal. Civ. Pro. Code § 580d.

This argument fails. It is well established in California that its antideficiency rules do not preclude an action against the borrower for fraud when, as here, the fraud has caused an impairment of the lender's security. Evans v. California Trailer Court, Inc., 28 Cal. App.4th 540, 556, 33 Cal.Rptr.2d 646, 654 (1994).

E. Conclusion

Pursuant to Bankruptcy Code § 523(a)(2)(A),[2] the court will issue its nondischargeable judgment herein in favor of Fidelity against Duncan in the sum of $604,114.99.

**END OF ORDER**

---

[2] Given this ruling, the court need not address Fidelity's claims under Bankruptcy Code § 523(a)(4) and (6).

Decision 11

| | |
|---|---|
| 1 | COURT SERVICE LIST |
| 2 | Edward A. Kunnes, Esq. |
|   | 100 N. Wiget Lane, Suite 150 |
| 3 | Walnut Creek, CA 94598 |
| 4 | James P. McBride, Esq. |
|   | 1065 A Street, Suite 224 |
| 5 | Hayward, CA 94541 |
| 6 | Office of the U.S. Trustee |
|   | 1301 Clay Street, Suite 690-N |
| 7 | Oakland, CA 94612 |

Decision                                    12