# UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

---

In re: TINA LOUISE DUNCAN

     Debtor        BAP No. NC-09-1372-KiSaH

-------------------------------

   TINA LOUISE DUNCAN       Bankr. No. 09-40135
              Adv. No. 09-04166
     Appellant          Chapter 7

      v.

FIDELITY NATIONAL TITLE COMPANY     February 4, 2011

     Appellee

---

## JUDGMENT

ON APPEAL from the United States Bankruptcy Court for California Northern - Oakland.

THIS CAUSE came on to be heard on the record from the above court.

ON CONSIDERATION WHEREOF, it is ordered and adjudged by this Panel that the judgment of the Bankruptcy Court is <u>AFFIRMED</u>.

### FOR THE PANEL,

Susan M Spraul
Clerk of Court
**By:** Freddie Brown, Deputy Clerk

NOT FOR PUBLICATION

UNITED STATES BANKRUPTCY APPELLATE PANEL

OF THE NINTH CIRCUIT

| | | |
|---|---|---|
| In re: | ) | BAP No.  NC-09-1372-KiSaH |
| | ) | |
| TINA LOUISE DUNCAN, | ) | Bk. No.  09-40135-EDJ |
| | ) | |
| Debtor. | ) | Adversary No. 09-4166 |
| _____ | ) | |
| | ) | |
| TINA LOUISE DUNCAN, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | M E M O R A N D U M[1] |
| | ) | |
| FIDELITY NATIONAL TITLE | ) | |
| COMPANY, | ) | |
| | ) | |
| Appellee. | ) | |
| _____ | ) | |

Argued and Submitted on October 20, 2010
at San Francisco, California

Filed - February 4, 2011

Appeal from the United States Bankruptcy Court
for the Northern District of California

Honorable Edward D. Jellen, Bankruptcy Judge, Presiding

Appearances:    Appellant Tina L. Duncan argued pro se
                Edward Kunnes argued for Appellee Fidelity
                National Title Company

Before: KIRSCHER, SALTZMAN,[2] and HOLLOWELL, Bankruptcy Judges.

_____

[1] This disposition is not appropriate for publication.
Although it may be cited for whatever persuasive value it may
have (see Fed. R. App. P. 32.1), it has no precedential value.
See 9th Cir. BAP Rule 8013-1.

[2] The Hon. Deborah J. Saltzman, Bankruptcy Judge for the
Central District of California, sitting by designation.

Debtor-Appellant, Tina Louise Duncan ("Duncan"), appeals a judgment from the bankruptcy court in favor of Creditor-Appellee, Fidelity National Title Company ("Fidelity"), the plaintiff in the underlying adversary proceeding.  The judgment declared a debt to Fidelity nondischargeable under 11 U.S.C. § 523(a)(2)(A).[3]  For the following reasons, we AFFIRM.

## I. FACTS AND PROCEDURAL BACKGROUND

### A.    Facts.

Duncan has a Bachelor's degree in Accounting and is currently working on a graduate degree.  She is employed full-time, and also runs a rental property management company.  Duncan has purchased and sold numerous properties throughout her life, including several investment properties.

In 2003, Duncan purchased a duplex rental unit located in Oakland, California for $339,000 (the "Property").  Duncan sold the Property to her sister, Detra Duncan ("Detra"), in 2004, for $415,000.  Detra obtained financing for the Property with BNC Mortgage, Inc., which was succeeded by Chase Home Finance LLC ("Chase").  One year later, Detra wanted to sell the Property back to Duncan, but Duncan was financially unable to purchase it.  However, Duncan offered to help Detra secure tenants and manage the Property for her.  Six months later, Detra gifted the Property to Duncan.  At that time, Detra owed approximately $500,000 on the mortgage with Chase.

Duncan embarked on obtaining a loan for the Property in her

---

[3] Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

- 2 -

name in January 2006. She first applied with World Savings, who opened an escrow with Fidelity on January 5, 2006. On January 10, 2006, Fidelity sent a letter to Chase asking for its pay-off demand amount. The "borrower" was noted as "Detra Duncan," and Detra signed the pay-off demand letter. Chase sent its demand to Fidelity on January 18, 2006. Fidelity conducted its one and only title search on the Property on February 20, 2006. Ultimately, World Savings rejected Duncan's loan application.

Sometime in February 2006, Duncan began working with Anthony Randolph ("Randolph"), a mortgage broker employed by EquiPrime Mortgage ("EquiPrime"). Randolph initially sought a first refinance mortgage on Duncan's behalf. Randolph was not successful.

Duncan then contacted Ameriquest Mortgage Company ("Ameriquest") in March 2006. Ameriquest approved Duncan for a loan in the amount of $576,000. An appraisal obtained by Ameriquest indicated that the Property's fair market value was $640,000. While the Fidelity escrow was pending, another escrow with a different title insurer - Financial Title Company - was opened on March 15, 2006, for the Ameriquest loan. The Ameriquest loan documents were signed on March 28, 2006, and the deed of trust in favor of Ameriquest was recorded on March 31, 2006, securing the note for $576,000. Chase was paid off with the Ameriquest proceeds. As a result, Ameriquest's lien was in first position.

Duncan claims that she spoke with Randolph again in late March 2006, just after Ameriquest approved her for the first loan, and asked him to now seek out a second loan so Duncan could

Case: 09-04166    Doc# 40    Filed: 02/08/11    Entered: 02/09/11 09:12:31    Page 4 of 21

obtain approximately $500,000 in cash to complete various repairs on the Property, as well as fund a building project on some of Duncan's vacant land. Randolph allegedly contacted Duncan in early April to inform her that he found a second loan with SRI Mortgages, Inc. ("SRI") for $612,000. Randolph then allegedly faxed Duncan a blank loan application form, which Duncan claimed she completed in her handwriting and faxed back to Randolph. No fax markings exist on the handwritten loan application. The handwritten loan application is dated April 8, 2006, and reflects Ameriquest's first loan in the amount of $576,000. It also reflects that Duncan believed the Property to be worth $1.15 million.

Just two weeks after obtaining the Ameriquest loan, Duncan executed a deed of trust in favor SRI on April 14, 2006, to secure what she alleges was a second loan for $612,000. The deed of trust in favor of SRI was recorded April 26, 2006. The Fidelity escrow, opened by World Savings in January, was utilized for the SRI-Duncan transaction.

According to the SRI loan documents in Fidelity's possession,[4] in the "Specific Closing Instructions," signed by Duncan on April 19, 2006, it states that SRI's loan must be recorded in first position and that no secondary financing had been approved. The "California Borrower Acknowledgment" form, dated April 14, 2006, and signed by Duncan on April 19, 2006, indicates by a checked box that the SRI loan was a "First

---

[4] SRI did not appear in the adversary proceeding or supply any documents regarding Duncan's loan. All loan documents, other than the handwritten loan application provided by Duncan, were submitted by Fidelity from its records.

- 4 -

Mortgage." In the "Borrower's Escrow Instructions" dated April 18, 2006, and signed by Duncan, it states that SRI had a "First Deed of Trust." In the "Estimated Closing Statement," also dated April 18, 2006, it states "New 1st Trust Deed to SRI Mortgage" and that the pay-off to "Chase" is $505,221.54. In that same document, Duncan instructed that the remaining funds of $84,635.48 be wired to her bank account. In another document dated April 18, 2006, Duncan approved the pay-off to "Chase" for the above-stated amount. The "Appraisal Disclosure" form dated April 14, 2006, and signed by Duncan on April 19, 2006, informed Duncan that she had a right to receive the appraisal report obtained by SRI in connection with her loan. The SRI appraisal report indicates the Property was valued at $720,000. The "Loan Application," drafted by someone other than Duncan but signed by Duncan on April 24, 2006, is a different version than Duncan's April 8th handwritten loan application and does <u>not</u> include the Ameriquest loan. Rather, it states that the existing lien to "Chase" is $505,000. Finally, the "Borrower's Certification & Authorization form, signed by Duncan on April 19, 2006, states that Duncan "made no misrepresentations in the [L]oan [A]pplication or other documents, nor omit[ted] any pertinent information."

Fidelity, who was unaware of the recorded March 31, 2006 Ameriquest lien because it conducted only one title search on the Property in February 2006, believed that the Chase loan remained outstanding and transmitted $505,221.54 to Chase in accordance with the escrow instructions signed by Duncan. Chase, however, having already been paid from the Ameriquest loan proceeds, sent

- 5 -

the funds back to Fidelity.  For reasons unknown, Fidelity then
wired the $505,221.54 to Duncan on May 2, 2006.  Duncan did not
contact Fidelity after receiving the funds.

Because the Ameriquest deed of trust remained of record,
SRI's deed of trust ended up being in second position.  Duncan
serviced the Ameriquest and SRI loans for approximately 20 months
before defaulting on both.  Both lenders sought to foreclose.
Option One, successor to SRI, recorded its notice of default on
April 28, 2008; Citiresidential, successor to Ameriquest,
recorded its notice of default on June 4, 2008.  It was during
this time that Option One/SRI discovered its deed of trust was
not in first position.  Fidelity too learned of its error.
Because Fidelity insured the first priority of Option One/SRI's
deed of trust, it negotiated a settlement payment of $604,114.99
to Citiresidential on December 11, 2008, in order to place Option
One/SRI in first position.  The Property was eventually sold.
Duncan filed a chapter 7 petition for relief on January 9, 2009.

**B.  The Adversary Proceeding.**

Fidelity timely filed its adversary complaint on April 6,
2009, asserting claims against Duncan under sections
523(a)(2)(A), (a)(4), and (a)(6).[5]  Under section 523(a)(2)(A),
Fidelity alleged that Duncan, with an intent to deceive, had
intentionally failed to disclose the Ameriquest deed of trust.
Duncan never informed either SRI or Fidelity during the pendency

---

[5] The bankruptcy court determined that because Fidelity
prevailed on its claim against Duncan under section 523(a)(2)(A),
it did not need to address Fidelity's two other claims under
sections 523(a)(4) and 523(a)(6).  Fidelity does not appeal this
ruling.  Therefore, those two claims are not before us.

- 6 -

of Fidelity's escrow that she had obtained new financing with
Ameriquest and encumbered the Property with a first deed of trust
in favor of Ameriquest.  Fidelity further alleged that Duncan
never disclosed that Chase had been paid off with the Ameriquest
loan proceeds.  Furthermore, Duncan's use of the Borrower's
Escrow Instructions directing the pay-off to Chase, which had
been paid previously through another escrow, constituted an
intentional, materially false statement respecting her financial
condition.  Ultimately, Fidelity asserted that Duncan's
intentional omissions and false representations, upon which
Fidelity reasonably relied, proximately caused its damages of
$604,114.99.

        The bankruptcy court held a trial on the matter on October
27, 2009.  SRI did not appear.  The two Fidelity employees that
handled the SRI-Duncan transaction in its Oakland escrow office
who no longer work for Fidelity did not testify.  Rather, Stephen
Mapes ("Mapes"), Senior Vice President of regional title
operations, testified for Fidelity.  Mapes admitted Fidelity's
error of wiring the funds to Duncan.  Mapes also admitted
Fidelity's error in missing the Ameriquest deed of trust in its
title search, but he could not recall exactly when Fidelity
discovered the error, only that it occurred sometime after it
wired the funds to Duncan.  Mapes further testified that Fidelity
made a demand on Duncan to return the erroneously wired funds of
$505,221.54 and that she failed to do so.  However, Mapes
admitted that he did not personally make the demand on Duncan,
and Fidelity offered no documentary evidence supporting that any
such demand was ever made.  On cross examination, Mapes testified

- 7 -

that Duncan paid $1,300 to Fidelity for title insurance in the SRI-Duncan transaction. Mapes did not affirmatively testify that Fidelity actually relied on the representations or omissions made by Duncan in the SRI loan documents.

Duncan was the only witness for the defense.[6] With respect to any SRI-Duncan loan documents, Duncan offered only her handwritten loan application into evidence and testified that all other SRI documents (among others) were lost in a move; her handwritten loan application was the only SRI document that survived. Apparently, two boxes containing the remaining SRI documents fell off the back of the mover's truck while it was traveling down the freeway. As for the SRI-Duncan loan documents submitted by Fidelity, Duncan admitted that she initialed and signed all of them, however, she did not study or read the documents before signing and faxing them to Randolph; she assumed the documents were correct and reflected the information she submitted to Randolph in early April 2006. Duncan also testified that she never knew of the appraisals conducted by Ameriquest or SRI until a month before trial, that she never requested a copy of either appraisal, and that she did not base her value of the Property at $1.15 million on those appraisals. Duncan further testified that she was not surprised to receive the roughly $505,000 in cash from Fidelity because this was the amount of proceeds she expected from the SRI "second" loan, minus fees and commissions. Duncan stated that she was not aware of Fidelity's error until it filed the adversary complaint against her.

_____

[6] Randolph was present at the trial, but neither party called him as a witness.

- 8 -

Finally, Duncan testified that she never intended to mislead or deceive SRI or Fidelity.

The bankruptcy court issued its decision on November 5, 2009. It determined that Duncan, a savvy real estate investor, with the knowledge of material facts that she had a duty to disclose and with an intent to deceive, concealed the Ameriquest deed of trust and affirmatively misrepresented the state of the Property and its encumbrances to SRI and Fidelity. As a result, the court found that Fidelity justifiably relied on Duncan's concealment and misrepresentations and suffered damages by having to pay Citiresidential $604,114.99. While the court agreed that Fidelity was negligent, its negligence did not negate Duncan's intentional fraudulent conduct and did not preclude recovery.

Accordingly, pursuant to section 523(a)(2)(A), the bankruptcy court entered a nondischargeable judgment in favor of Fidelity and against Duncan for $604,114.99, plus interest incurred from January 9, 2009. Duncan timely appealed.

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 157(b)(2)(I) and 1334. We have jurisdiction under 28 U.S.C. § 158.

## III. ISSUE

Did the bankruptcy court err when it entered the nondischargeable judgment against Duncan under section 523(a)(2)(A)?

## IV. STANDARD OF REVIEW

In claims for nondischargeability, the Panel reviews the bankruptcy court's findings of fact for clear error and

- 9 -

conclusions of law de novo, and applies de novo review to "mixed questions" of law and fact that require consideration of legal concepts and the exercise of judgment about the values that animate the legal principles. <u>Oney v. Weinberg (In re Weinberg)</u>, 410 B.R. 19, 28 (9th Cir. BAP 2009).

The determination of justifiable reliance is a question of fact reviewed for clear error. <u>Eugene Parks Law Corp. Defined Benefit Pension Plan v. Kirsh (In re Kirsh)</u>, 973 F.2d 1454, 1456 (9th Cir. 1992). The bankruptcy court's witness credibility findings are entitled to special deference, and are also reviewed for clear error. <u>Weinberg</u>, 410 B.R. at 28; Rule 8013. A finding is clearly erroneous if it is illogical, implausible, or without support in the record. <u>United States v. Hinkson</u>, 585 F.3d 1247, 1261 (9th Cir. 2009).

We may affirm the bankruptcy court on any grounds supported by the record. <u>Canino v. Bleau (In re Canino)</u>, 185 B.R. 584, 594 (9th Cir. BAP 1995).

V. DISCUSSION

**The Bankruptcy Court Did Not Err When It Determined That The Debt To Fidelity Was Nondischargeable Under Section 523(a)(2)(A).**

While Duncan was represented by counsel at trial, she appears pro se on appeal. We agree with Fidelity that Duncan's opening brief and record are woefully inadequate. However, due to her pro se status, we must construe her brief liberally and determine if any basis for reversing is clearly evident. <u>Balistreri v. Pacifica Police Dep't</u>, 901 F.2d 696, 699 (9th Cir. 1990).

- 10 -

**A.    Section 523(a)(2)(A).**

To prevail on a claim under section 523(a)(2)(A),[7] a creditor must demonstrate five elements: (1) misrepresentation, fraudulent omission or deceptive conduct by the debtor; (2) knowledge of the falsity or deceptiveness of her statement or conduct; (3) an intent to deceive; (4) justifiable reliance by the creditor on the debtor's statement or conduct; and (5) damage to the creditor proximately caused by its reliance on the debtor's statement or conduct. Weinberg, 410 B.R. at 35 (citing Turtle Rock Meadows Homeowners Ass'n v. Slyman (In re Slyman), 234 F.3d 1081, 1085 (9th Cir. 2000)). "The creditor bears the burden of proof to establish all five of these elements by a preponderance of the evidence." Id. (citing Slyman, 234 F.3d at 1085).

**B.    Analysis.**

**1.    Misrepresentation or Omission, Knowledge, and Intent to Deceive.**

Duncan asserts that no evidence exists of her intent to commit fraud. She contends that the SRI loan was always intended to be a second loan on the Property and that she disclosed the Ameriquest loan in her handwritten loan application to SRI. In other words, Duncan disputes the bankruptcy court's findings of fact.

_____

[7] Section 523(a)(2)(A) provides:

A discharge under . . . this title does not discharge an individual debtor from any debt (2) for money, property, services, or an extension, renewal or refinancing of credit, to the extent obtained by (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

- 11 -

1    For the first three elements, the bankruptcy court found
2 that Duncan conceded her omissions and false representations.
3 Her signed Loan Application, dated April 24, 2006, omitted the
4 Ameriquest loan but did disclose the no-longer-outstanding Chase
5 loan that Duncan paid off almost one month prior.  Duncan also
6 conceded that she failed to disclose to SRI or Fidelity that she
7 had recently paid off Chase or that the Property was subject to
8 Ameriquest's first deed of trust.  Further, Duncan conceded that
9 she had represented in the Borrower's Escrow Instructions and the
10 California Borrower's Acknowledgment, as well as the Specific
11 Closing Instructions, all of which she signed on April 19, 2006,
12 that her debt to SRI was to be secured by a first deed of trust,
13 and she misrepresented in the escrow and closing instructions
14 that the Chase loan was still outstanding.

15    Although Duncan testified that she signed all of the SRI
16 loan documents without knowledge of their contents and that she
17 had no intent to deceive SRI or Fidelity, the bankruptcy court
18 found that the strong weight of evidence was to the contrary.
19 Duncan, an experienced real estate investor, had been turned down
20 at least twice for a first loan prior to obtaining the alleged
21 second loan from SRI.  Further, Duncan failed to show that she
22 furnished her handwritten loan application to SRI or Fidelity, in
23 which she disclosed the Ameriquest loan and claimed the Property
24 was worth $1.15 million.  Rather, she signed the Loan Application
25 stating that the Property's value was $720,000.  Moreover, even
26 her inflated valuation was less than the total of the Ameriquest
27 and SRI liens.  Hence, according to the bankruptcy court,
28 Duncan's assertion that she believed SRI would lend to her on the

- 12 -

security of a second deed of trust when no other lender would
lend on the security of a first deed of trust, or that SRI would
be willing to loan $612,000 behind a first encumbrance of
$576,000, defied credulity.

We see no clear error here. Duncan is a savvy real estate
investor. As a party to a business transaction, Duncan had a
duty to disclose the material fact of the Ameriquest first deed
of trust to SRI and Fidelity. Although she claims she did
disclose it in her handwritten loan application, Fidelity never
saw the handwritten application, and Duncan failed to establish
that she ever submitted it to SRI. Duncan could not explain why
the handwritten loan application contained no fax numbers at the
top, even though Randolph had allegedly faxed it to her and she
faxed it back to Randolph.

In the Loan Application submitted into evidence by Fidelity,
Duncan did not disclose the Ameriquest deed of trust and
affirmatively misrepresented the state of the Property and its
encumbrances. Duncan also signed numerous SRI loan documents
stating that SRI's loan was to be secured by a first deed of
trust and that Chase was to be paid off. Of course, Chase had
already been paid off one month earlier with the Ameriquest loan
proceeds. Duncan's concession that she did not read the SRI loan
documents prior to signing them is no defense. Her reckless
indifference to the truth supports a cause of action under
section 523(a)(2). Arm v. A. Lindsay Morrison, M.D., Inc. (In re
Arm), 175 B.R. 349, 354 (9th Cir. BAP 1994).

Finally, because of Duncan's inability to obtain a first
loan from at least two lenders, we agree that it defies credulity

- 13 -

that Duncan believed SRI would lend to her on the security of a
second deed of trust.  We find it even more difficult to believe
that Randolph was unable to obtain a first loan for Duncan but
somehow managed to find her an alleged second with SRI.

> **2.  Justifiable Reliance and Damages.**

Duncan contends that Fidelity failed to establish that it
relied upon her statements, especially when Fidelity had an
independent duty to fully investigate title to the Property.
Because Fidelity failed to conduct an updated title search just
prior to the SRI closing, as opposed to relying on the search it
conducted in February 2006, Duncan contends that Fidelity's
negligence caused its own loss.

For determining reliance, courts apply a subjective
"justifiable" reliance standard, which turns on a person's
knowledge under the particular circumstances.  Citibank, N.A. v.
Eashai (In re Eashai), 87 F.3d 1082, 1090 (9th Cir. 1996).
"Justification is a matter of the qualities and characteristics
of the particular plaintiff, and the circumstances of the
particular case, rather than of the application of a community
standard of conduct to all cases."  Id. (quoting Field v. Mans,
516 U.S. 59, 70 (1995), quoting the Restatement (Second) of Torts
§ 545A cmt. b (1976)).  "[A] person is justified in relying on a
representation of fact although he might have ascertained the
falsity of the representation had he made an investigation."  Id.
(quoting Mans, 516 U.S. at 70).  In other words, negligence in
failing to discover an intentional misrepresentation is no
defense for the fraudulent party.

Although generally a plaintiff must establish that it relied

- 14 -

on defendant's misrepresentations to its detriment, the debtor's
nondisclosure of a material fact in the face of a duty to
disclose can establish the requisite reliance and causation for
actual fraud under the Bankruptcy Code. Apte v. Romesh Japra,
M.D., F.A.C.C. Inc. v. Apte (In re Apte), 96 F.3d 1319, 1323 (9th
Cir. 1996). A party to a business transaction is under a duty to
disclose to the other party facts basic to the transaction before
the transaction is consummated, if he or she knows that the other
is about to enter into the transaction under a mistake as to them
and that the other party, because of the relationship between
them, would reasonably expect disclosure of such facts. Id. at
1324 (citing the Restatement (Second) of Torts § 551 (1976).

Reliance may also be presumed when "the case can be
characterized as one that primarily alleges omissions." Binder
v. Gillespie, 184 F.3d 1059, 1064 (9th Cir. 1999)(limiting the
"presumption of reliance" set forth in Affiliated Ute Citizens v.
United States, 406 U.S. 128, 153-54 (1972) to fraud cases that
primarily allege omissions). This is so because of the
difficulty of proving "'a speculative negative' - that plaintiff
relied on what was not said." Id. (quoting Blackie v. Barrack,
524 F.2d 891, 905 (9th Cir. 1975)). In order to determine
whether the presumption applies, the court must analytically
characterize the action as either primarily a nondisclosure case
or a positive misrepresentation case. Id. While Affiliated Ute
and Binder are securities fraud cases, this Panel and other
bankruptcy courts within the Ninth Circuit have applied their
principles to fraud cases under section 523(a)(2)(A). See
Tallant v. Kaufman (In re Tallant), 218 B.R. 58, 67-68 (9th Cir.

- 15 -

BAP 1998)(applying "presumption of reliance" to section
523(a)(2)(A)); In re Gonzales, 2007 WL 7216267, at *7 (Bankr.
S.D. Cal. Mar. 23, 2007)(same); In re Bishop, 2008 WL 2705186, at
*5 (Bankr. D. Idaho July 2, 2008)(fraud case under section
523(a)(2)(A) but court refused to apply "presumption of reliance"
because plaintiff's case rested entirely on debtor's affirmative
misrepresentations).

Here, for the element of "justifiable reliance," the
bankruptcy court found that the SRI loan documents showed that
SRI intended to extend Duncan a $612,000 loan to pay off Chase,
secured by a first deed of trust on the Property. The documents
also showed that Fidelity sent funds to Chase in belief that the
Chase loan was still outstanding. While recognizing that
Fidelity was negligent in its conduct, and that it might have
ascertained the truth had it made an investigation, the court
determined that Fidelity's negligence was far outweighed by
Duncan's intentional fraudulent conduct. The court therefore
determined that Duncan had a duty to disclose the material fact
of Ameriquest's first deed of trust to SRI and Fidelity, and her
concealment of it was sufficient to establish the requisite
reliance and causation for actual fraud under section
523(a)(2)(A). Apte, 96 F.3d at 1323.

The determination of justifiable reliance is a question of
fact reviewed for clear error. Kirsh, 973 F.2d at 1456. We
agree that Fidelity's contributory negligence of not conducting a
title search just prior to the SRI closing, which likely would
have revealed the Ameriquest first deed of trust, is no bar to
recovery because Duncan's fraudulent conduct constitutes an

- 16 -

intentional tort. <u>Mans</u>, 516 U.S. at 70. Although Fidelity is a
sophisticated party in the business of investigating and insuring
titles, no obvious "red flags" existed on the face of the SRI-
Duncan loan documents to alert Fidelity of possible fraud and
that it should have investigated further. No red flags could
have existed because Duncan intentionally omitted the Ameriquest
first deed of trust on all of the pertinent SRI loan documents,
and she failed to inform Fidelity that Chase had already been
paid with the proceeds from the Ameriquest loan.

While Mapes did not affirmatively testify as to Fidelity's
reliance on Duncan's statements about the actual state of the
Property and its encumbrances, such testimony was not necessary.
Fidelity's reliance can be presumed because this case is one that
"primarily" alleges "omissions." <u>Binder</u>, 184 F.3d at 1064.
Duncan's omissions about the Ameriquest deed of trust and the
pay-off to Chase - material facts she had a duty to disclose to
SRI and Fidelity - sufficiently establish Fidelity's reliance for
actual fraud under section 523(a)(2)(A). <u>Id.</u>; <u>Apte</u>, 96 F.3d at
1323.

Accordingly, none of the bankruptcy court's findings are
illogical, implausible, or without support in the record, and we
see no clear error here. The bankruptcy court correctly
determined that Fidelity's reliance was established by Duncan's
intentional omissions, which proximately caused Fidelity's loss
to Citiresidential for $604,114.99.

**VI. CONCLUSION**

Based on this record, we conclude that the bankruptcy court
did not err when it entered the nondischargeable judgment in

- 17 -

1  favor of Fidelity and against Duncan for $604,114.99, plus
2  interest.  We AFFIRM.
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

- 18 -

# U.S. Bankruptcy Appellate Panel
# of the Ninth Circuit

125 South Grand Avenue, Pasadena, California 91105
Appeals from Central California (626) 229-7220
Appeals from all other Districts (626) 229-7225

## NOTICE OF ENTRY OF JUDGMENT

**BAP No.:** NC-09-1372-KiSaH

**RE:** TINA LOUISE DUNCAN

A separate Judgment was entered in this case on **02/04/2011.**

## BILL OF COSTS:

Bankruptcy Rule 8014 provides that costs on appeal shall be taxed by the Clerk of the Bankruptcy Court. Cost bills should be filed with the Clerk of the Bankruptcy Court from which the appeal was taken. 9th Cir. BAP Rule 8014-1

## ISSUANCE OF THE MANDATE:

The mandate, a certified copy of the judgment sent to the Clerk of the Bankruptcy Court from which the appeal was taken, will be issued 7 days after the expiration of the time for filing a petition for rehearing unless such a petition is filed or the time is shortened or enlarged by order. See Federal Rule of Appellate Procedure 41.

## APPEAL TO COURT OF APPEALS:

An appeal to the Ninth Circuit Court of Appeals is initiated by filing a notice of appeal with the Clerk of this Panel. The Notice of Appeal should be accompanied by payment of the $455 filing fee and a copy of the order or decision on appeal. Checks may be made payable to the U.S. Court of Appeals for the Ninth Circuit. See Federal Rules of Appellate Procedure 6 and the corresponding Rules of the United States Court of Appeals for the Ninth Circuit for specific time requirements.

<u>CERTIFICATE OF MAILING</u>

The undersigned, deputy clerk of the U.S. Bankruptcy Appellate Panel of the Ninth Circuit, hereby certifies that a copy of the document on which this certificate appears was transmitted this date to all parties of record to this appeal.

**By:** Freddie Brown, Deputy Clerk

**Date:** February 4, 2011